UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
PROTECTION ONE ALARM
MONITORING, INC.,

                              Plaintiff,                  REPORT AND
                                                            RECOMMENDATION

    -against-

                                                             07 CV 1473 (DLI)(RML)

EXECUTIVE PROTECTION ONE
SECURITY SERVICE, LLC,

                              Defendant.
----------------------------------------------------------------X

LEVY, United States Magistrate Judge:

        By order dated May 30, 2007, the Honorable Dora Irizarry, United States District Judge, issued a default judgment against defendant Executive Protection One Security Service, LLC and referred this matter to me to conduct an inquest and issue a report and recommendation on injunctive relief, attorney's fees, and costs. For the reasons stated below, I respectfully recommend that plaintiff's request for injunctive relief be granted, and that plaintiff be awarded $19,366.15 in attorney's fees and costs.

## BACKGROUND AND FACTS

        Plaintiff Protection One Alarm Monitoring, Inc. ("plaintiff" or "Protection One") commenced this action on April 9, 2007, alleging federal trademark infringement, federal unfair competition and false designation of origin, federal dilution, federal trademark cyberpiracy, New York state use of name with intent to deceive, and common law trademark infringement, unfair competition and unjust enrichment. (See Complaint, dated Apr. 9, 2007 ("Compl."), ¶¶ 17-48.) After defendant failed to appear or answer in this action, Judge Irizarry entered a default judgment against it and referred the issues of injunctive relief, attorney's fees, and costs to me.

(See Order, dated May 30, 2007.) By order dated May 31, 2007, I directed plaintiff to serve and file a submission in support of its claims by July 13, 2007 and defendant to serve and file any opposition on or before August 17, 2007. (See Order, dated May 31, 2007.) Plaintiff submitted additional papers on July 13, 2007. (See Memorandum of Law in Support of Plaintiff-Judgment Creditor Protection One Alarm Monitoring, Inc.'s Application for a Permanent Injunction and Fees and Costs, dated July 13, 2007 ("Pl.'s Mem.")) To date, the court has received no communication from defendant.

It is well-settled that, once a default judgment is granted, a defendant is deemed to have admitted all the well-pleaded allegations in the complaint pertaining to liability. Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Oy Saimaa Lines Logistics Ltd. v. Mozaica-New York, Inc., 193 F.R.D. 87, 89 (E.D.N.Y. 2000). Plaintiff's allegations are as follows:

Protection One is a security alarm monitoring goods and services company incorporated in Delaware and based in Lawrence, Kansas. (Compl. ¶¶ 1, 7.) It owns two federal trademark registrations for the mark "Protection One" and several additional federal trademark registrations incorporating "Protection One." (Id. ¶¶ 7, 8.) These marks are associated with Protection One's business in security alarm monitoring and security alarms. (Id.) Protection One has used the marks since at least 1988. (Id. ¶ 7.) Protection One has also acquired extensive worldwide common law rights in the "Protection One" trademarks based on years of continuous and widespread use. (Id. ¶ 11.) As a result of Protection One's time, effort, and money expended in advertising, promoting and selling goods and services in connection with its "Protection One" mark, "the public has come to know and recognize Protection One's . . . mark

2

and associate it with Protection One." (Id. ¶¶ 11, 12.)

Executive Protection One Security Service, LLC ("defendant" or "Executive Protection One") provides security guard services from its principal place of business in Brooklyn, New York. (Id. ¶¶ 2, 13.) Executive Protection One is not associated or affiliated with Protection One, nor has Executive Protection One ever been authorized to use Protection One's mark or variations thereof. (Declaration of Leesa Mason, dated July 12, 2007 ("Mason Decl."), ¶ 12.) Executive Protection One uses "Protection One" and "Protection 1" to market its services. (Id. ¶¶ 9-10.) Executive Protection One has constructive and actual notice of Protection One's rights in the "Protection One" marks. (Mason Decl. ¶ 11.)

Plaintiff seeks a permanent injunction, attorney's fees, and costs. (See Pl.'s Mem.) Protection One further seeks the transfer of the domain name www.executiveprotection1.com to Protection One and requests that the website associated with that domain name be disabled permanently. (Id.) Protection One does not seek damages in this case. (Id.)

## DISCUSSION

A. Permanent Injuction

Protection One seeks a permanent injunction against Executive Protection One's use of the name Protection One or any other name that is confusingly similar. (Id.) To obtain a permanent injunction in a trademark infringement case, a "plaintiff must demonstrate actual success on the merits and irreparable harm." Hard Rock Cafe Int'l, (USA) Inc. v. Morton, No. 97 Civ. 9483, 1999 WL 701388, at *4 (S.D.N.Y. Sept. 9, 1999) (citing Wojnarowicz v. American Family Ass'n, 745 F. Supp. 130, 148 n.13 (S.D.N.Y. 1990)). As explained,

defendant's default constitutes an admission of liability; therefore, plaintiff has achieved actual success on the merits. See, e.g., DCH Auto Group (USA) Inc. v. Fit You Best Auto., Inc., No. CV-05-2973, 2006 WL 279055, at *9 (E.D.N.Y. Jan. 10, 2006).

It is axiomatic that trademark laws are designed to protect the public from confusion over the source of goods or services. Hermes Int'l v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 107-08 (2d Cir. 2000). As the Second Circuit has explained, a trademark:

> epitomizes the goodwill of a business. This creation and perpetuation of goodwill depends on customer recognition. The nature of goodwill is dictated by the consumer's desire to do business with the same seller. The buyer expects the same experience with each purchase – this is the reason d'etre [sic] for the sale.

Power Test Petroleum Distributors v. Calcu Gas, Inc., 754 F.2d 91, 97 (2d Cir. 1985). Thus, in trademark cases, "'a showing of likelihood of confusion as to source or sponsorship establishes the requisite likelihood of success on the merits as well as risk of irreparable harm.'" Am. Cyanamid v. Campagna per le Farmacie in Italia, S.P.A., 847 F.2d 53, 55 (2d Cir. 1988) (quoting Home Box Office, Inc. v. Showtime/The Movie Channel Inc., 832 F.2d 1311, 1314 (2d Cir. 1987)). See also Brennan's, Inc. v. Brennan's Rest., LLC., 360 F.3d 125, 129 (2d Cir. 2004) ("proof of a likelihood of confusion establishes both likelihood of success on the merits and irreparable harm."). To meet this burden, Protection One need "only to raise a serious question of likelihood of confusion." Am. Cyanamid, 847 F.2d at 55 (citing LeSportsac, Inc. v. K Mart Corp., 754 F.2d 71, 79 (2d Cir. 1985)).

To determine the likelihood of confusion, courts generally consider a number of non-exclusive factors, including: (1) the strength of the mark; (2) the similarity between the two marks; (3) the proximity of products in the marketplace; (4) evidence of actual confusion; (5)

4

defendant's bad faith; (6) the quality of defendant's product or service; and (7) the sophistication of the relevant consumer group. Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961). The strength of a mark is measured by "'its tendency to identify the goods sold under the mark as emanating from a particular . . . source.'" Western Publ'g Co. v. Rose Art Indus., Inc., 910 F.2d 57, 61 (2d Cir. 1990) (quoting McGregor-Doniger, Inc. v. Drizzle, Inc., 599 F.2d 1126, 1131 (2d Cir. 1979), superceded on other grounds, Paddington Corp. v. Attiki Imps. & Distribs., Inc., 996 F.2d 577 (2d Cir. 1993)). The "proximity of products" element addresses whether the two products compete with each other. See Marshak v. Thomas, No. CV-98-2550, 1998 WL 476192, at *8 (E.D.N.Y. June 11, 1998).

  Here, Protection One alleges that Executive Protection One's use of its marks for the marketing or sale of security services and/or products is likely to cause confusion. (See Compl.) Plaintiff specifically alleges that defendant uses the mark "Protection One" on its website and when answering its telephone. (Id. ¶¶ 15-16.) Plaintiff further states that the use of the marks is likely to cause confusion. (See, e.g., id. ¶¶ 18, 23.) I find plaintiff's assertion reasonable: since the two companies provide similar services, the use of a name that incorporates plaintiff's marks is likely to cause confusion as to the source of Executive Protection One's security services. Moreover, the facts pled in plaintiff's complaint are uncontested due to defendant's default. To obtain an injunction in a trademark case the plaintiff need show "only a likelihood of confusion or deception . . . in order to obtain equitable relief." Warner Bros. v. Gay Toys, Inc., 658 F.2d 76, 79 (2d Cir. 1981) (citation omitted). I find that plaintiff has established a likelihood of confusion.

  Generally, injunctive relief for irreparable harm is appropriate where "damages

5

are difficult to establish and measure" such as the loss of a potential relationship with a client that "would produce an indeterminate amount of business in years to come." Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 404 (2d Cir. 2004) (citing Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 69 (2d Cir. 1999)). Here, plaintiff's damages are difficult to quantify in dollar terms but may include the loss of future business. Accordingly, Protection One has met its burden for a permanent injunction. I therefore respectfully recommend that Executive Protection One be permanently enjoined from using the mark Protection One or any other variation containing the mark in connection with the promotion, sale or marketing of security devices or services.

> B. Domain Name Transfer

Plaintiff also requests that defendant and anyone associated with defendant be ordered to "transfer the www.executiveprotection1.com domain name to Protection One and forever disable and not use the website associated therewith." (Compl. at 8-9.) To establish a cause of action for illegitimate use of a mark in a domain name, the holder of the mark must demonstrate that the domain name: (1) was used or registered with (2) a bad faith intent (3) to profit from the mark. 15 U.S.C. § 1125(d)(1)(A). If the mark is a distinctive mark, the domain name is infringing if it is "identical or confusingly similar to that mark." Id. If the mark is famous, there is infringement if the domain name is "identical, confusingly similar or dilutive of that mark." 15 U.S.C. § 1125(d)(1)(A)(ii)(II). An injunction may preclude an infringing party from "using . . . a domain name registered to defendant . . . or marks similar to or likely to cause confusion therewith." Int'l Consulting Serv. Ltd. v. Cheap Tickets, Inc., 140 Fed. Appx. 305, 305 (2d Cir. 2005) (summary order enjoining defendant from using a domain name after unfair competition had been established).

Executive Protection One uses the website associated with the domain name www.executiveprotection1.com to market its services. (See Mason Decl. ¶¶ 9-10.) Here, Protection One alleges that Executive Protection One has acted willfully and deliberately. (See, e.g., Compl. ¶¶ 24, 28; Pl.'s Mem. at 7; see also Mason Decl., ¶ 15.) Additionally, defendant has failed to file an answer or otherwise submit any evidence to contradict the allegations set forth in the Complaint. Defendant's infringement of plaintiff's mark is therefore deemed willful. See Tiffany (NJ) v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003). See also Fallaci v. The New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983) (explaining that the court may infer willfulness from a defendant's failure to appear and defend an action in which the plaintiff alleges willful conduct). The evidence submitted by plaintiff sufficiently demonstrates that defendant used the Protection One mark in connection with its business and refused to cease doing so even after plaintiff contacted defendant, in writing, to request that it cease using the marks. (Mason Decl. ¶ 11.) Executive Protection One uses the website for business purposes to advertise its services. (Compl. ¶ 14.) The website name is confusingly similar to and thus dilutive of the mark. (Id. ¶ 30.) Without deciding whether the marks in this matter are famous or distinctive, I am persuaded that plaintiff has established the necessary elements for an injunction against future use of the domain name. Therefore, I respectfully recommend that defendant be permanently enjoined from using the domain name www.executiveprotection1.com.

C. Attorney's Fees

Plaintiff requests $26,753.00 in attorney's fees under the Lanham Act. (See Declaration of Bruce E. Samuels, Esq., dated July 13, 2007 ("Samuels Decl."); Declaration of

Timothy J. Pastore, Esq., dated July 13, 2007 ("Pastore Decl.").) Section 35(a) of the Lanham Act permits the court to award reasonable attorney's fees to the prevailing party in "exceptional cases." See 15 U.S.C. § 1117(a). In the Second Circuit, exceptional cases warranting the award of reasonable attorney's fees are limited to those evidencing fraud, bad faith, or willful infringement. See Gordon and Breach Sci. Publishers S.A. v. Am. Inst. of Physics, 166 F.3d 438, 439 (2d Cir. 1999) (citing Twin Peaks Prods, Inc. v. Publications Int'l, Ltd., 996 F.2d 1366, 1383 (2d Cir. 1993)); see also Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995) ("'exceptional' circumstances include willful infringement"). Even with a finding of bad faith, the decision to award attorney's fees remains within the sound discretion of the district court. See Gidatex v. Campaniello Imports, Ltd., 82 F. Supp. 2d 136, 147 (S.D.N.Y. 2000).

In the Complaint, plaintiff alleges that Executive Protection One's use of the Protection One mark was willful. (See Compl. ¶¶ 24, 28.) As discussed above, a default requires that the factual allegations in the complaint be accepted as true and plaintiff plead the necessary facts for willful infringement. Therefore, defendant's violations are deemed willful and thus constitute exceptional circumstances. An award of reasonable attorney's fees is thus appropriate. Plaintiff supports its fee request with contemporaneous time records.[1]

In calculating a "reasonable" fee award, the court must first establish a reasonable hourly rate, which is "the rate a paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 112 (2d Cir. 2007).

---

[1] In the Second Circuit, applications for attorney's fees must be supported by contemporaneous time records specifying relevant dates, time spent, and work done. New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983); Broadcast Music, Inc. v. R Bar of Manhattan, Inc., 919 F. Supp. 656, 661 (S.D.N.Y. 1996).

Reasonable hourly rates are determined by reference to fees in the community in which the action is pending and to the skill and experience of the attorneys who worked on the matter. Luciano v. Olsten Corp., 109 F.3d 111, 115-16 (2d Cir. 1997). The party seeking fees bears the burden of establishing that the number of hours for which it seeks compensation is reasonable. Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (citing Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)).

Plaintiff hired two law firms to represent it in this action: Duval & Stachenfeld LLP of New York and Lewis and Roca LLP of Arizona. (See Pastore Decl.; Samuels Decl.) In each case the applications for attorney's fees were supplemented by bills sent to plaintiff. I will address the submissions from each firm separately.

1. Duval & Stachenfeld Attorney's Fees

Duval & Stachenfeld LLP asserts that between February 8, 2007 and July 12, 2007 attorneys and paralegals expended a total of 68.4 hours on this matter. (Pastore Decl. ¶ 6.) This included 41.6 hours by the partner in charge of this matter, Timothy Pastore, at $375 per hour; 23.3 hours by an associate, Jennifer Kelly, at $275 per hour; and 1.7 and 1.8 hours by two paralegals at $135 and $125 per hour, respectively. (Id. ¶¶ 1-2, 6.) Duval & Stachenfeld LLP did not make any showing of the attorneys' or paralegals' professional experience, nor did they attempt to demonstrate the reasonableness of the hourly rates except by stating that these rates are "based upon prevailing rates charged by attorneys in this community." (Id. ¶ 8.)

The burden is on the moving party to show that the requested fees are reasonable. Cruz, 34 F.3d at 1160 (citing Hensley, 461 U.S. at 437). Although similar or even higher rates have been approved in trademark cases in our jurisdiction, the moving parties in those cases

9

provided the court with evidence of the qualifications and experience of the attorneys. See Int'l Consulting Servs. v. Cheap Tickets, Inc., No. 01-CV-4768, 2007 U.S. Dist. LEXIS 71689, at *23-25 (E.D.N.Y. Sept. 12, 2007) (in a trademark infringement case, awarding attorney's fees of $340-$540 per hour for partners, $305 per hour for an associate and $105-$126 per hour for a legal assistant based on, among other factors, the attorneys' professional backgrounds); Nat'l Ass'n for the Specialty Food Trade, Inc. v. Construct Data Verlag Ag, No. 04 Civ. 2983, 2006 U.S. Dist. LEXIS 89148, at *16 (S.D.N.Y. Dec. 11, 2006) (in a trademark infringement case, awarding attorney's fees of $400-$540 per hour for partners based partially on their biographic information).

Where the moving party fails to provide information on the attorneys' and paralegals' backgrounds and experience, courts have used their discretion to award fees at a rate lower than requested. See, e.g., Nat'l Ass'n for the Specialty Food Trade, Inc., 2006 U.S. Dist. LEXIS 89148, at *17-18 (declining to award fees at the requested rate and instead awarding at a lower rate for paralegals and law clerks because the court could not judge the reasonableness of the request where the moving party did not provide background and experience information); Phat Fashions LLC v. Blue Max Corp., No. 01 Civ. 3933, 2005 U.S. Dist. LEXIS 9689, at *8 (S.D.N.Y. May 2, 2005) (reducing the attorney's fees for a trademark infringement action from $54,000 to "a reasonable fee [of] $15,000, which represents fifty hours at an average rate of $300 per hour" where the moving party failed to provide evidence of the attorney's experience, billing rates or tasks performed).

Here, because counsel has failed to provide information regarding the experience levels of the attorneys who worked on the case, I recommend that Mr. Pastore be compensated at

the rate of $300 per hour and that Ms. Kelly be compensated at $250 per hour.

Where, as here, the application for fees is voluminous, the court may order an across-the-board percentage reduction in compensable hours. In re "Agent Orange" Products Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987) (explaining that "the district court has the authority to make across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application'") (quoting Carey, 711 F.2d at 1146); see also United States Football League v. National Football League, 887 F.2d 408, 415 (2d Cir. 1989) (approving a percentage reduction of total fee award to account for vagueness in documentation of certain time entries). I find a thirty percent reduction in plaintiff's counsel's billing records sufficient to account for some vague entries and some duplicative and excessive work in this routine default matter. See Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998); Bridges v. Eastman Kodak, 91 Civ. 7985 (RLC), 1996 WL 32325, at *6 (S.D.N.Y. Jan. 26, 1996).

The two Duval & Stachenfeld attorneys who worked on this case expended a total of 64.9 hours on this case. This included 23.3 hours for Jennifer Kelly and 41.6 hours for Timothy Pastore. I respectfully recommend an award of $12,805 for the work performed by the attorneys at Duval & Stachenfeld.[2] Similarly, I recommend a rate of $80 per hour for the work performed by the paralegals. The two paralegals worked a total of 3.5 hours; I recommend an award of $280 for the work of the paralegals. In sum, I respectfully recommend a total award of $13,085 for Duval & Stachenfeld's time in this matter.

---

[2] Based on my recommended thirty percent reduction I would compensate Ms. Kelly for 16.3 hours and Mr. Pastore for 29.1 hours. Compensation for Ms. Kelly's work is $4,075. Compensation for Mr. Pastore's work is $8,730.

2. <u>Lewis and Roca Attorney's Fees</u>

Lewis and Roca LLP asserts that between January 8, 2007 and July 6, 2007, attorneys spent a total of 17 hours on this case. (Samuels Decl. ¶ 6.) This includes 4.5 hours at $345 per hour by Bruce Samuels; .6 hours by Christy Hubbard, a partner, at $300 per hour; and 11.9 hours by Lizzette Zubey, a fourth year lawyer, at $215 per hour. (<u>Id.</u>) Mr. Samuels states that he is the attorney in charge of this matter and that he is admitted to the bar in Arizona. (<u>Id.</u> ¶¶ 1-2.)

The evidence of experience provided by Lewis and Roca LLP is more complete than the evidence provided by Duval & Stachenfeld. I find that there is sufficient support for Lewis and Roca's application for attorney's fees. Additionally, I find that the activities listed are not excessively duplicative. Thus, I respectfully recommend that $4,291 be awarded for the time spent on this matter by Lewis and Roca's LLP.

D. <u>Costs</u>

Plaintiff also requests an award of costs. Courts generally award costs to prevailing parties in cases involving violations of the Lanham Act. <u>See</u> <u>Tri-Star Pictures, Inc. v. Unger</u>, 42 F. Supp. 2d 296, 306 (S.D.N.Y. 1999); 15 U.S.C. § 1117(a). Taxable costs under 28 U.S.C. § 1920 and Local Civ. R. 54.1(c) include the $350 filing fee for a federal action. In addition, "[o]ut-of-pocket litigation costs are generally recoverable if they are necessary for the representation of the client." <u>Tri-Star Pictures</u>, 42 F. Supp. 2d at 306. As a result of defendant's default, plaintiffs have prevailed and are therefore entitled to recover reasonable costs.

12

Plaintiff seeks $1,036.72 in costs.[3] This includes $246.28 for photocopying and binding, $376.25 for filing fees, $38.85 for telephone calls, $40.00 for "miscellaneous," $182.69 for regular and express mail service, and $152.65 for "lawyers services." (Pastore Decl. Ex. A; Samuels Decl. ¶ 8.) Several of these expenses were not routine costs and were not explained in the declarations or attached bills. As with attorney's fees, the burden is on the moving party to explain and justify the costs. Here, plaintiff failed to do so regarding the costs labeled "miscellaneous" and "lawyers services." Therefore, I respectfully recommend that plaintiff not be awarded costs for those amounts. Further, the current filing fee is $350, not $376.25.

I recommend an award of costs of $817.82, including $246.28 for copying and binding, $350 for filing fees, $38.85 for telephone calls, and $182.69 for regular and express mail service. These are reasonable out-of-pocket expenses that are customarily compensable. See, e.g., Kuzma v. I.R.S., 821 F.2d 930, 933-34 (2d Cir. 1987) ("Identifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are [compensable but] routine office overhead . . . must normally be absorbed within the attorney's hourly rate."); Duke v. County of Nassau, No. 97-CV-1495, 2003 WL 23315463, at *6 (E.D.N.Y. Apr.14, 2003) ("Courts have continuously recognized the right for reimbursement of costs such as photocopying, postage, [and] transportation[ ] . . . .") (citation omitted); United States Media Corp., Inc. v. Edde Entm't, Inc., No. 94 Civ. 4849, 1999 WL 498216, at *10 (S.D.N.Y. July 14, 1999) (postage, courier service, and telephone charges "are recoverable as the reasonable out-of-pocket disbursements of an attorney, billable to the client."); Bhatia v. Air India, No. 90

---

[3] All amounts in the costs section are the sums of the amounts requested by Lewis and Roca and by Duval & Stachenfeld unless stated otherwise. The costs are documented with bills sent to plaintiff for costs and attorney's fees.

Civ. 5445, 1992 WL 232146, at *5 (S.D.N.Y. Sept. 2, 1992) (awarding plaintiff costs and disbursements for long-distance telephone calls, facsimiles, photocopying, postage, express mail, service of process, messenger service, transportation, and deposition transcripts).

Additionally, plaintiffs seek $1,172.33 in electronic research costs. In <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 369 F.3d 91, 98 (2d Cir. 2004), the Second Circuit addressed the issue of reimbursement for online legal research costs and held that, in the context of a fee-shifting provision, the charges for online research "may properly be included in a fee award" because the use of such services likely reduces the number of hours required for an attorney's manual search, thereby lowering the lodestar. It stated that if the party seeking costs "normally bills its paying clients for the cost of online research services, that expense should be included in the fee award." <u>Id.</u> Post-<u>Arbor Hill</u> decisions in this district have allowed reimbursement for computerized research. <u>See, e.g.</u>, <u>Aiello v. Town of Brookhaven</u>, 94-CV-2622, 2005 WL 1397202, at *8 (E.D.N.Y. June 13, 2005). It is clear from the billing records that the attorneys billed these costs to the plaintiff. Thus, I respectfully recommend that plaintiff be awarded $1,172.33 for computer legal research.

## CONCLUSION

For the reasons stated above, I respectfully recommend that defendant be enjoined from further infringing use of plaintiff's mark. I also recommend that the domain name www.executiveprotection1.com be transferred to plaintiff. Finally, I respectfully recommend that plaintiffs be awarded $17,376 in attorney's fees[4] and $1,990.15 in costs, for a total of

---

[4] The sum includes $4,291 for Lewis and Roca's time and $13,085 for Duval & Stachenfeld's time.

$19,366.15. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Irizarry and to my chambers, within ten (10) business days. Failure to file objections within the specified time waives the right to appeal the District Court's order. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
March 19, 2008